IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Mark A. Potter,                :

    Plaintiff,             :

  v.                           :      Case No. 2:10-cv-696

SABIC Innovative Plastics US,  :      MAGISTRATE JUDGE KEMP
    LLC,
                               :
    Defendant.


OPINION AND ORDER

    Plaintiff Mark A. Potter suffers from a tremor disorder that causes his hands and arms to shake. For thirty-six years, he worked for Defendant SABIC Innovative Plastics US, LLC as a truck driver. He stopped working in 2008, and in 2009, he filed an application for benefits with his employer-sponsored long-term disability plan. The plan administrator denied Mr. Potter's application and his subsequent appeal.

    Mr. Potter filed this action against SABIC pursuant to the Employee Retirement Income Security Act (ERISA). The parties filed competing motions for judgment on the record. On June 6, 2011, this Court denied Defendant's motion for summary judgment, and granted Mr. Potter's motion for judgment on the administrative record. The Court held that the plan's decision was arbitrary and capricious, reversed the administrative decision denying Mr. Potter's claim for long-term disability benefits, and remanded the case to the plan administrator for further proceedings in accordance with the Opinion and Order.

    Following this Court's decision, Mr. Potter filed a motion for attorney's fees pursuant to 29 U.S.C. § 1132(g). That motion has been fully briefed. For the reasons that follow, Mr.

Potter's motion will be granted.

## I. Background

Mr. Potter was employed by Defendant SABIC as a landfill truck driver and equipment operator. As an employee, he was a participant in a group disability plan sponsored by SABIC and administered by Sedgwick Claims Management. The plan provides long-term disability benefits for covered employees who meet the following definition of "disabled":

> "Disabled" means that an Employee, because of a medically determinable, permanent, physical or mental impairment, is unable to perform his present job and unable to earn more than 80% of his pre-disability earnings at his own occupation, or for any employer/job within the Employee's remaining capacities in the local economy, and for which the Employee is reasonably fitted by education, training, or experience is available . . . . For purposes of determining whether an Employee is Disabled, the local economy shall be defined as being within 60 miles from the Employee's residence at the time of disability.

See Doc. # 15-4, 88. For a portion of the thirty-six years that Mr. Potter worked for SABIC, he was being treated for a tremor disorder that caused his hands and arm to shake. On May 8, 2008, Mr. Potter stopped working, and he has not worked since.

In 2009, Mr. Potter applied for benefits with his employer-sponsored long-term disability plan. In January, 2010, the Plan administrator denied Mr. Potter's application, stating that the evidence did not demonstrate that his impairments were permanently disabling. In April, 2010, Mr. Potter appealed that denial, pointing to, among other evidence, a work evaluation concluding that he could not do any fine manipulation. Mr. Potter also pointed to disability awards he received from another insurer and the Social Security Administration.

On June 18, 2010, SABIC denied Mr. Potter's appeal. In that final denial, SABIC wrote that the "Independent Physician

Assessment, IPA has reviewed the file and has opined that the [claimant] does have a familial tremor and is disabled from his own position, but is not disabled from any position that he may qualify for based on training, education, or experience." Doc. # 15-3, 98-99. Defendant's June 18 letter cites to a review by Robert D. Petrie, M.D., and quotes Dr. Petrie's criticism of Mr. Potter for not implementing a neurologist's recommendations or following up with that neurologist. However, the letter ultimately concludes, "[b]ased on the available information, the employee is permanently disabled from his previous occupation as a truck driver; however, he is not disabled from any occupation for which he is suited based on education, training or experience."

There is no evidence cited in the letter or in Dr. Petrie's report of what occupation or occupations Defendant believed Mr. Potter was suited for based on education, training or experience. Indeed, Dr. Petrie's report noted that whether jobs that did not require fine manipulation "exist in the employee's community, and whether they are within his sphere of education, training, or experience, is a question to be answered through a vocational assessment." Defendant did not point to any record evidence of any occupation that Mr. Potter could perform, much less any occupation available in his community that was within his sphere of education, training or experience. The plan administrator also completely failed to acknowledge or consider the Social Security Administration's award of benefits.

In its Opinion and Order granting Mr. Potter's motion for judgment on the administrative record, the Court noted that the basis for the plan administrator's final denial of Mr. Potter's claim was fairly narrow, resting solely on the conclusion that Mr. Potter could do jobs other than his previous job. Because there was no evidence to support that decision, the Court held

that the plan administrator's decision was arbitrary and capricious, reversed the administrative decision denying Mr. Potter's claim for long-term disability benefits, and remanded the case to the plan administrator for further proceedings.

Mr. Potter then moved for attorney's fees, and that motion has been fully briefed. On July 21, 2011, Mr. Potter filed a motion for leave to file a supplemental brief in support of his motion for fees. That brief attached a letter from the plan administrator dated July 14, 2011 informing Mr. Potter that his application for Disability Pension has been approved. This Court grants Mr. Potter's motion for leave to file a supplemental brief (#30) and takes notice of the plan administrator's approval of Mr. Potter's application.

## II. Threshold Determination

In an ERISA action by a plan participant to recover benefits, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). This language does not require the party seeking attorney's fees to be the prevailing party. Hardt v. Reliance Standard Life Ins. Co., --- U.S. ---, 130 S. Ct. 2149, 2152 (2010). Rather, the Supreme Court has interpreted § 1132(g)(1) to allow courts to exercise their discretion in awarding attorney's fees to either party "as long as the fee claimant has achieved some degree of success on the merits." Id. at 2152 (2010) (internal citations and quotation marks omitted). A claimant that achieves only "trivial success on the merits" or a "purely procedural victor[y]" does not satisfy the "some degree of success" requirement. Id. at 2158 (citations omitted).

The Hardt Court determined that, based on the facts of that case, the plaintiff's success in persuading the court to remand the plan administrator's decision was "far more than" a trivial success on the merits or purely procedural victory. Hardt, 130

S. Ct. at 2158-59.  While the Court in Hardt did not reach the decision of whether a remand order, without more, constitutes "some success on the merits," the Sixth Circuit subsequently held that a plaintiff achieves some degree of success on the merits by achieving a remand based on failure to comply with ERISA guidelines.  McKay v. Reliance Standard Life Ins. Co., 2011 WL 2518728, *9 (6th Cir. June 27, 2011) (affirming the award of attorney fees to plaintiff and stating "[i]ndeed, [the plaintiff] was just like the Hardt claimant in that he 'persuaded the District Court to find that the plan administrator . . . failed to comply with the ERISA guidelines' and that, as a result, he 'did not get the kind of review to which [he] was entitled under the applicable law.'"); see also Bowers v. Hartford Life and Accident Ins. Co., 2010 WL 4117515, *2 (S.D. Ohio Oct. 19, 2010).

Here, there is no question that under Hardt and Sixth Circuit precedent, Mr. Potter achieved some success on the merits.  Mr. Potter was able to persuade the Court that the plan administrator's decision was arbitrary and capricious and that it should not be upheld under ERISA.  The Court reversed the plan administrator's decision and remanded for further consideration consistent with the Court's Opinion and Order.  As noted, the decision was based on the complete absence of evidence supporting the basis for the plan administrator's decision, and the plan administrator's failure to consider or acknowledge the Social Security Administration's award of benefits.  In addition, while not necessary for a finding of some degree of success, the plan administrator awarded Mr. Potter the benefits that he sought after the case was remanded.  See Doc. # 30-1 at 3; see also McKay, 2011 WL 2518728 at *9 (holding that the plaintiff had achieved some degree of success notwithstanding the fact that the plan administrator ultimately denied the plaintiff his benefits and the Sixth Circuit upheld that denial).

Defendant argues that Mr. Potter's victory was merely a procedural one.  Defendant points to this Court's statement that, apart from two defects, "the balance of the decision-making process appears to be reasonable."  However, the balance of the decision-making process is not at issue and does not diminish the errors which led to reversal and remand.  Defendant also points to the fact that this Court did not make a finding as to whether Mr. Potter was, in fact, eligible for benefits under the plan.  As support for this argument, Defendant notes that in Hardt, although the district court did not make a finding as to eligibility, the Supreme Court stated that the district court "found 'compelling evidence that [the plaintiff] is totally disabled due to her neuropathy,' and stated that it was 'inclined to rule in [the plaintiff's] favor' on her benefits claim, but declined to do so before 'first giving [the defendant] the chance to address the deficiencies in its' statutorily mandated 'full and fair review' of that claim."  130 S. Ct. at 2158.  Contrary to this argument, following Hardt the Sixth Circuit has neither required such commentary from district courts for a finding that the plaintiff achieved some degree of success on the merits, nor has it required any indication that plaintiff will ultimately be awarded benefits.  McKay, 2011 WL 2518728.  To the contrary, McKay held that the plaintiff achieved some degree of success on the merits notwithstanding the fact that the plaintiff's claim was denied by the plan administrator after remand and that the Sixth Circuit affirmed that denial.  Id.

Furthermore, unlike Hardt, in this case there was simply not enough evidence in the record for the Court to develop an inclination one way or the other as to the factual issue at hand, that is, whether there were jobs available within Mr. Potter's community that precluded him from being considered fully disabled.  Defendant's failure to gather evidence needed to

support its decision cannot serve to diminish the degree of success that Mr. Potter achieved. Accordingly, Mr. Potter has satisfied the threshold requirement of achieving "some degree of success," which allows this Court to exercise its discretion in ruling on his request for attorney fees.

### III. Five-Factor Test

The Court of Appeals has developed a five-factor test for district courts to consider in exercising their discretion as to whether to award fees under § 1132(g). Those factors are:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

McKay, 2011 WL 2518728 at *8 (quoting Gaeth v. Hartford Life Ins. Co., 538 F.3d 524, 529 (6th Cir. 2008) (internal citations and quotations omitted)). "No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." Gaeth, 538 F.3d at 529 (internal quotation marks and citation omitted).

The first factor is the degree of culpability or bad faith of the opposing party. A decision that a plan administrator's decision was arbitrary and capricious does not require a finding that he or she acted culpably or in bad faith, but neither does it preclude such a finding "based only on the evidence that supported a district court's arbitrary-and-capricious determination." Gaeth, 538 F.3d at 530 (citations omitted). In Gaeth, the court concluded that the district court did not abuse its discretion in weighing the first factor in favor of awarding attorney's fees even if the plan administrator had a good-faith

basis for believing that the plaintiff was no longer disabled, because "it terminated his benefits without a single piece of current medical evidence regarding his physical condition as it relates to the occupation for which he had been deemed disabled," and the plan administrator was "therefore culpable for making a benefits determination that was unsupported by competent medical evidence." Id. at 530-31; see also McKay, 2011 WL 2518728, *8 (affirming district court's determination that the defendant's "failure to conduct a 'full and fair investigation' into [the plaintiff's] claims, including its failure to consider the correct policy, amounted to arbitrary and capricious conduct that rose to the level of culpability required for a fee award" such that the first factor weighed heavily in the plaintiff's favor); cf. Shelby Cty. Health Care Corp. v. Majestic Star Casino, LLC, 581 F.3d 355, 377 (6th Cir. 2009) (concluding that the district court erred in weighing the first factor in favor of a fee award because the plan administrator's decision resulted from "its misreading of a Plan provision rather than a selective review of the record or reliance on incompetent medical evidence").

　　Here, Mr. Potter points to the facts supporting this Court's arbitrary and capricious decision to argue that bad faith was evident. While the Court cannot, looking at the record, infer reckless or intentional disregard of Mr. Potter's interests or other evidence that reaches the level of bad faith, the plan administrator's actions do reach the level of some culpability. Defendant denied Mr. Potter's benefits without evidence in the record supporting its determination that Mr. Potter was not disabled from performing unspecified jobs for which he was suited by his experience, education and training. There was no evidence of what jobs Mr. Potter might be suited for based on his experience, education, and training; no evidence of whether any such jobs existed within the sixty miles of his residence; and no

evidence of whether these jobs paid at least 80% of his pre-disability earnings.  Defendant was therefore culpable for making a benefits determination that was unsupported by competent evidence.  In addition, the plan administrator failed to consider or acknowledge the Social Security Administration's award of benefits to Mr. Potter.  Accordingly, the first factor weighs in favor of awarding attorney's fees.

The second factor – the opposing party's ability to satisfy an award of attorney's fees - is not in dispute.  Defendant acknowledges its ability to satisfy Mr. Potter's request for attorney's fees.  This factor therefore weighs in favor of awarding attorney's fees.

The third factor is the deterrent effect of a fee award. The Court of Appeals "has consistently interpreted the deterrence factor as requiring consideration of a fee award's deterrent effect <u>on other plan administrators</u>."  <u>Gaeth</u>, 538 F.3d at 531.  A fee award may deter other plan administrators where the facts of the case "are not so unique that they fail to serve any deterrence value to other insurance companies under similar circumstances," and where the court's opinion "articulated important principles that all plan administrators should heed." <u>Id</u>. at 531 (internal quotation marks and citation omitted). While attorney fee awards "are likely to have the greatest deterrent effect where deliberate misconduct is in the offing," the Court of Appeals has upheld district court decisions determining that the award of attorney's fees was warranted as a deterrent measure where the decision to terminate benefits was improper solely because it was made without any supporting medical evidence.  <u>Id</u>. at 532 (internal quotation marks and citations omitted); <u>see also McKay</u>, 2011 WL 2518728, at *8; <u>cf. Shelby Cty. Health Care Corp.</u>, 581 F.3d at 377-78 (holding that awarding attorney fees to the plaintiff would not have a

deterrent effect because the defendant's decision to deny benefits was based on improper application of a plan provision to the particular facts in that case, and noting that a "'deterrence measure is arguably more appropriate' where a plan administrator performs a cursory review of a claim for benefits or bases its denial on unreliable medical evidence") (citation omitted).

The Court's decision to remand here rested on an important principle that all plan administrators should heed: plan administrators abuse their discretion when they make a decision as to any significant aspect of disability that is not supported by any evidence. Even the more narrow holding of this case is neither unique or new. When a claimant is disabled from his or her job and the relevant plan nonetheless denies eligibility for disability benefits unless he or she is unable to perform other jobs, a decision to deny or terminate benefits on that basis cannot be made without some evidence of what jobs the claimant can perform. See, e.g., McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161 (6th Cir. 2003) (holding that plan administrator's termination of the plaintiff's benefits because it determined that the plaintiff could engage in an occupation for wages was improper without some evidence of what jobs the claimant could perform); Crider v. Highmark Life Ins. Co., 458 F. Supp. 2d 487, 507 (W.D. Mich. 2006) (where a claimant is not eligible for disability benefits if he or she can work at a different job and make at least 80% of the claimant's pre-disability earnings, a plan administrator responsible for terminating benefits on that basis must "(1) identify the type of jobs that the administrator believes plaintiff is capable of performing; and (2) make a sufficient inquiry into whether the jobs it has identified are jobs the claimant can reasonably perform in light of the claimant's specific functional limitations.") (citations omitted); Caldwell v. Life Ins. Co. Of

-10-

North America, 287 F.3d 1276, 1289 (10th Cir. 2002)(considering similar plan language and holding that a denial of benefits on the basis of the claimant's ability to perform other jobs "requires a complicated evaluation of a claimant's abilities, skills, and education as well as an assessment of the labor market in the claimant's geographic region"). Defendant's error here is one that other plan administrators have made, and a fee award could have a deterrent effect on other plan administrators. While this is not a case where evidence of misconduct magnifies the deterrent effect, it is also not a case where the plan administrator's error was a reasonable misinterpretation of the specific terms of a plan that other plan administrators are unlikely to have to interpret. Accordingly, this factor weighs in favor of awarding fees.

The fourth factor - whether Mr. Potter sought to confer a common benefit on plan participants or resolve a significant legal question under ERISA - is not in dispute. Mr. Potter acknowledges that this factor does not favor a fee award.

The fifth factor is the relative merits of the parties' positions. McKay upheld the district court's conclusion that the fifth factor favored the plaintiff because he "had overcome the highly deferential arbitrary or capricious standard to achieve a remand and that further, because [the defendant] had failed to fully develop the record necessary for a full and fair review, [the plaintiff] had the better position." 2011 WL 2518728, at *8. In that case, following the district court's decision awarding attorney's fees, the plan administrators ultimately denied benefits to the plaintiff. Id. at *2. Nevertheless, the court upheld both the plan administrator's denial of benefits and the district court's award of attorney's fees. Id. at *9; but cf. Gaeth, 538 F.3d at 534 (noting that the record left open the possibility that the defendant might prevail in providing

evidence to support its previous decision and stating that, as a result, the merits of the plaintiff's position "are at best questionable as compared to the merits of [the defendant's] position, causing this factor to weigh against an award of attorney fees at this point in the proceedings").

Here, as in McKay, Mr. Potter overcame the highly deferential arbitrary or capricious standard when he obtained a remand. As noted, Defendant failed to develop fully the record necessary for a full and fair review. Furthermore, unlike McKay, the plan administrator granted benefits to Mr. Potter following remand. Although not dispositive, that is further evidence of the merits of Mr. Potter's position. As a result, the fifth factor weighs in favor of awarding fees. On balance, these factors persuade the Court that a fee award should be made.

IV. Amount of Award

ERISA allows courts in their discretion to award "a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1). Thus, the inquiry now turns to what attorney's fee is "reasonable" in this case. In many situations where statutes provide for fee shifting, the proper first step in determining a reasonable attorney's fee is to "multiply the number of hours reasonably expended on the litigation times a reasonable hourly rate." Pennsylvania v. Del. Valley Citizen's Counsel for Clean Air, 478 U.S. 546, 564 (1986) (citation omitted) (ruling on award of attorney's fees under the Clean Air Act and discussing the award of fees under civil rights statute); see also Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 551 (6th Cir. 2008) (ruling on award of attorney's fees pursuant to retaliation claims brought under Title VII, the ADEA and Ohio state law). This method of calculating fees is known as the "lodestar" approach. Del. Valley Citizen's Counsel for Clean Air, 478 U.S. at 563. While the Court of Appeals has not

required courts to apply the lodestar approach when awarding fees under section 1132(g)(1), it has noted that courts are "free to take into account prevailing market rates for comparable legal work, the amount of time reasonably necessary to accomplish tasks in the course of the litigation and the quality of representation provided by counsel," so long as it provides some basis for its determination. Bemis v. Hogue, 1991 WL 102385, *7 (6th Cir. June 13, 1991).

The standard for determining whether the number of hours expended was reasonable is "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." Woolridge v. Marlene Indus. Corp., 898 F.2d 1169, 1173 (6th Cir. 1990), abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598 (2001). Mr. Potter provided an affidavit from counsel and an itemized billing statement detailing the 63.1 hours expended by counsel. Defendant has not objected to the hours claimed by Mr. Potter's counsel. After reviewing counsel's billing statement, the Court finds these hours reasonable.

To determine whether a billing rate is reasonable, courts should assess the prevailing market rate in the relevant community, which is the rate that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record . . . ." Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 350 (6th Cir. 2000) (citations omitted). Mr. Potter seeks a fee award based on an hourly rate of $277 per hour for the work done by an eighth-year attorney who is a principal partner in his law firm and $237 per hour for the work done by an attorney who has been licensed for fifteen years and is serving as "of counsel" at the same firm. Defendant has not objected to these rates, and the Court finds that these rates are

reasonable. See, e.g., Eppard v. ViaQuest, Inc., No. 2:09-CV-234, 2010 WL 4568868, *4 (S.D. Ohio Nov. 2, 2010) (concluding that the blended hourly rate of $216 per hour was somewhat lower than some hourly rates, but reasonable); Bowers v. Hartford Life and Accident Ins. Co., No. 2:09-cv-290, 2010 WL 4117515, *6 (S.D. Ohio Oct. 19, 2010) (finding that an hourly rate of $350 was reasonable); Weidauer v. Broadspire Servs., No. C-3-07-097, 2009 WL 152501, *10 (S.D. Ohio Jan. 21, 2009) (approving an hourly rate of $300); Kauffman v. Sedalia Med. Ctr., Inc., No. 2:04-CV-543, 2007 WL 490896, * (S.D. Ohio Feb. 9, 2007) (approving hourly rates of $300 to $325 for an attorney who graduated from law school 35 years prior and $210.00 to $235.00 for an attorney who graduated from law school 10 years prior); Plummer v. Hartford Life Ins. Co., No. C-3-06-094, 2007 WL 838926, *3 (S.D. Ohio March 15, 2007) (finding that an hourly rate of $175.00 and $200.00 for two different attorneys was reasonable).

The billing statement provided by Mr. Potter includes costs of litigation in the amount of $141.58. Defendant has not objected to those costs and the Court finds them to be reasonable. Accordingly, the attorney's fees and costs sought by Mr. Potter, totaling $15,412.28, are reasonable.

V. Conclusion and Order

For the reasons set forth above, the Court grants Mr. Potter's motion for attorney's fees in the amount of $15,412.28 (#24). The Clerk shall enter judgment accordingly.

/s/ Terence P. Kemp
United States Magistrate Judge